IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C&D TECHNOLOGIES, INC. AND TROJAN BATTERY CO., <br> Plaintiffs/Counter Defendants, | CIVIL ACTION |
| v. | NO. 23-2608 |
| ELLIOTT AUTO SUPPLY CO., INC., d/b/a FACTORY MOTOR PARTS, <br> Defendant/Counter Plaintiff. | |

### MEMORANDUM

**HODGE, J.**                                                                    September 27, 2024

Plaintiff C&D Technologies, Inc.'s ("Plaintiff" or "C&D") brought a single-count breach of contract action arising out of its exclusive distribution agreement (the "Agreement") with Defendant Elliott Auto Supply Co, Inc. d/b/a Factory Motor Parts' ("Defendant" or "FMP"). (*See generally* ECF No. 1.) FMP filed counterclaims, asserting three counts: (1) breach of the Agreement for wrongful termination; (2) breach of the Agreement's exclusivity clause; and (3) in the alternative, breach of the duty of good faith and fair dealing. (*See generally* ECF No. 11.)

Presently before the Court is C&D's motion to dismiss FMP's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (the "Motion"). (ECF No. 16.) FMP opposes the Motion (ECF No. 19), and C&D filed a Reply in further support (ECF No. 20).

I.   BACKGROUND

   A.   Factual Background[1]

On October 21, 2021, C&D entered into an exclusive distribution agreement (the "Agreement") with FMP to distribute batteries. (ECF No. 11 at 17 ¶ 38.) The Agreement made FMP an exclusive distributor for C&D in a number of western states. (ECF No. 1-1 at § 1(A)(i).) The Agreement could be terminated "upon the expiration of the notice and cure period, in the event of a breach of this Agreement by the other Party, which such breach remains uncured thirty (30) days after written notice is given to the breaching Party specifying the nature and extent of the breach and demanding cure." (*Id*. at § 10(B)(ii).) The Agreement stated that if FMP failed to pay C&D for the products in accordance with the Agreement or FMP failed to abide by the requirements of Section 2, it would constitute a material breach. (*Id*. at § 10(C)(ii)(d).) Section 2 required that Defendant "commits adding" new physical locations or subdistributors in Wyoming, Montana, and South Dakota, among other places by June 30, 2022. (*Id*. at § 10(C)(ii)(g) (citing Schedule D).) On March 17, 2023, C&D sent FMP a Notice of Material Breach & Inadequate Performance (the "Notice"), stating that it had breached the Agreement by "failing to make payments when due" and "failing to add new physical locations or subdistributors in Wyoming, Montana, and South Dakota." (ECF No. 16 at 8.) On April 20, 2023, C&D terminated the Agreement based upon FMP's purported failure to cure these breaches. (*Id*. at 9.) C&D filed suit to recover $8,120,112.44. (ECF No. 1 at ¶ 38.) C&D alleges that $4,936,732.00 of the balance owed is overdue and subject to additional monthly service charges. (*Id*. at ¶ 39.)

In response to C&D's complaint, FMP brought counterclaims alleging that C&D (1) wrongfully terminated the Agreement; (2) breached the exclusivity provisions of the Agreement;

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

and (3) violated the covenant of good faith and fair dealing in terminating the Agreement. (*See* ECF No. 11.) C&D now moves to dismiss FMP's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 16.) Section 13(B) of the Agreement provides that the "Agreement shall be governed, construed and enforced solely by the laws of the State of Delaware, without regard to its conflict of law principles." (ECF No. 1-1 at § 13(B).)

C&D sent FMP the Notice informing FMP that it was in breach of the Agreement because it had "an overdue balance of $1,043,225.75" and had "fail[ed] to add new physical locations or subdistributors in Wyoming, Montana, and South Dakota." (ECF No. 11 at 21 ¶¶ 68–70.) Upon receipt of the Notice, FMP claims it made payments to C&D of "approximately $6.25 million." (*Id*. ¶ 71.) FMP also asserts that it cured its failure to add new physical locations or subdistributors by committing to opening new physical locations in those states. Specifically, FMP asserts that it "finalized plans to open a new location in Sioux Falls, South Dakota in late 2023" and "[i]n or around March 2023 . . . it had arranged for subdistributors in Montana and Wyoming." (*Id*. at 18 ¶¶ 48–49.) FMP does not claim to have completed the opening of these new physical locations by the end of the cure period, rather FMP asserts that it was only required to "commit" to adding those resources by the cure deadline. (*See* ECF No. 19 at 16 ("Schedule D-5 obligated FMP '*commit*' to whether it would add 'New Physical Locations *or* Subdistributors' by June 30, 2022, not *complete* the addition." (emphasis in original)).)

II.   **LEGAL STANDARD**

Rule 12(b)(6) governs C&D's motion to dismiss FMP's counterclaims. *Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 818 n.35 (E.D. Pa. 2016) (citing *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) ("Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure

3

12(b)(6) as they do for a complaint."). The counterclaimant must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

To survive a Federal Rule of Civil Procedure 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008). Rather, the plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n. 8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), the Court first separates the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210–11 (3d Cir. 2009). Then, the Court determines whether the alleged facts make out a plausible claim for relief. *Id*. (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d. Cir. 2009).

Under Delaware law, "[i]n order to survive a motion to dismiss for failure to state a breach of contract claim, the [claimant] must demonstrate: first, the existence of the contract . . . ; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the [claimant]." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Because

the counterclaims rely on the Agreement and there is no dispute as to the Agreement's authenticity, the Agreement is incorporated into the pleadings and the Court may consider it in a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

**III.   DISCUSSION**

"The starting point in construing any contract is to determine whether a provision is ambiguous, *i.e.*, whether it is *reasonably* subject to more than one interpretation." *Matulich v. Aegis Commc'ns Grp., Inc.*, 942 A.2d 596, 600 (Del. 2008) (emphasis in original). Section 2(A)(iii) states that Defendant "will add the additional resources as described on Schedule D in the Territories." (ECF No 1-1 at § 2(A)(iii).) Schedule D states that Defendant "commits adding" new physical locations or subdistributors in the three states at issue in this case by June 30, 2022. (*Id.* at Schedule D at D-5.) Viewing these two terms together, the Agreement states that Defendant had the affirmative obligation to have new physical locations or subdistributors operating in Wyoming, Montana, and South Dakota by June 30, 2022. The Court finds that the text of the at-issue provisions of the Agreement is unambiguous. Since FMP did not fulfill its obligation to add new physical locations or subdistributors by the end of cure period, C&D terminated pursuant to the terms of the Agreement. FMP's claim of wrongful termination therefore fails. *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citation omitted) ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty.").

FMP also claims that C&D breached the exclusivity clause by contracting with a third party prior to the termination of the Agreement. FMP has not pled facts sufficient to sustain this claim. First, the exclusivity clause did not survive the termination of the contract. (*See* ECF No.

1-1 at § 10(I) (listing the provisions of the Agreement which "shall survive and continue in effect after [its] termination" and not including the exclusivity clause).) Second, the plain language of the exclusivity clause does not prohibit C&D from negotiating with another party during the lifetime of the Agreement, nor does it prevent C&D from agreeing to enter into an agreement with a third party after the termination of the Agreement. The exclusivity clause states that:

> With respect to [FMP]'s distribution of those Products on Schedule A approved for sale in the Exclusive Territories, Distributor is hereby appointed as C&D's exclusive distributor of such Products for the territory(ies) described on Schedule B (the "Exclusive Territory").

(ECF No. 1-1 at § 1(A)(i).) By its plain meaning, the exclusivity clause only prevents C&D from agreeing to allow another party to distribute its batteries in the exclusive territories during the lifetime of the Agreement. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original). FMP alleges that "in or around the Winter of 2022 and Spring of 2023, C&D began negotiating a master distributor agreement with Continental" and "C&D and Continental's [exclusive distributor] agreement had been in the works for some time before the public announcement [of the agreement on May 17, 2023]." (ECF No. 11 at 20 ¶¶ 63, 66.) Even in viewing the facts alleged in the light most favorable to FMP, nothing in the Agreement precluded C&D from negotiating an agreement with a third party that they would then enter into after the termination of its Agreement with FMP. FMP contends that "C&D and Continental agreed to enter the master distributor agreement well before C&D and Continental publicly announced their agreement on May 17, 2023." (*Id*. at 23 ¶ 89.) The facts at this juncture do not demonstrate that C&D actually entered an agreement with Continental before May 17, 2023 but rather supports FMP's contention that C&D began negotiating an agreement with Continental

before C&D terminated the Agreement with FMP. The Court therefore finds that the FMP's claim that C&D breached the exclusivity agreement must also fail.

Finally, FMP claims that C&D violated the covenant of good faith and fair dealing when it exercised its sole discretion to terminate the Agreement. In doing so, FMP misapplies that doctrine. "The covenant is best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (internal quotations and citations omitted). "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty . . . unattached to the underlying legal document.'" *Id*. (citations omitted). The Agreement states that in the event that FMP failed to make required payments to C&D or failed to add the new physical locations or subdistributors in Wyoming, Montana, and South Dakota, then "if such situations remain uncured thirty . . . days after written notice is given . . . to [FMP] . . . C&D shall have the right in its sole discretion to immediate termination of this Agreement . . . ." (ECF No. 1-1 at § 1(E).) When FMP entered into the Agreement, it consented to these terms, and though it declares that the alleged breaches were not "of such a magnitude" as to justify the Agreement's termination, (ECF No. 19 at 30), the plain language of the Agreement does not contemplate the magnitude of the breach in determining whether the Agreement may be terminated, only whether it occurred. (*See* ECF No. 1-1 at § 10.) Since the Court holds that FMP has not plead facts sufficient to claim that C&D wrongfully terminated the Agreement, it cannot find that C&D violated the covenant of good faith and fair dealing.

## IV. CONCLUSION

For the foregoing reasons, the Court grants C&D's motion to dismiss FMP's counterclaims. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
HODGE, KELLEY B., J.