IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C&D TECHNOLOGIES, INC. and TROJAN BATTERY COMPANY, LLC, Plaintiffs, | CIVIL ACTION |
| v. | |
| ELLIOTT AUTO SUPPLY CO., INC., doing business as "FACTORY MOTOR PARTS," Defendant. | NO. 23-2608 |

HODGE, J.                                                                                               July 29, 2025

**MEMORANDUM**

Plaintiffs C&D Technologies, Inc. and Trojan Battery Company ("Plaintiffs" or "C&D") brought a single-count breach of contract action arising out of its exclusive distribution agreement (the "Agreement") with Defendant Elliott Auto Supply Co, Inc. d/b/a Factory Motor Parts' ("Defendant" or "FMP"). (ECF No. 1).

Presently before the Court are two motions: (1) Defendant's Motion for Leave to File an Amended Answer, Affirmative Defenses, and Counterclaim ("Motion for Leave to Amend") (ECF No. 43); and (2) Plaintiffs' Motion for Summary Judgment (ECF No. 54). Upon consideration of the parties' Motions, responses in opposition, and replies in support, the Court denies Defendant's Motion and grants Plaintiffs' Motion.

I.     **Background**[1]

On October 21, 2021, C&D and FMP entered into the Agreement through which FMP would purchase batteries wholesale from C&D for distribution throughout the western United

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

States as C&D's exclusive distributor. (ECF No. 54 at 6). The Agreement (1) required that FMP pay C&D within sixty (60) days of invoices being issued for purchased batteries, (2) adds a "monthly service charge" of 1.5% of the total overdue balance for balances remaining unpaid after thirty (30) days, (3) provides for recovery of attorneys' fees incurred in collection of past due amounts, and (4) provides that "termination of this Agreement will not release either Party from the obligation to make payment of all amounts accrued but unpaid as of the effective date of such expiration or termination." (*Id.* at 6-7). Additionally, Section 2 of the Agreement required Defendant to commit to adding new physical locations or subdistributors in Wyoming, Montana, and South Dakota by June 30, 2022. (ECF No. 1-1 at 32). The Agreement stated that if FMP failed to pay C&D for batteries in accordance with the Agreement or failed to abide by the requirements of Section 2, it would constitute a material breach. (*Id.* at 18). The Agreement could be terminated "upon the expiration of the notice and cure period, in the event of a breach of this Agreement by the other Party, which such breach remains uncured thirty (30) days after written notice is given to the breaching Party specifying the nature and extent of the breach and demanding cure." (*Id.* at 17).

On March 17, 2023, C&D sent FMP a Notice of Material Breach & Inadequate Performance (the "Notice"), stating that it had breached the Agreement by "failing [to] make payments when due" and "failing to add new physical locations or subdistributors in Wyoming, Montana, and South Dakota." (ECF No. 29-1 at 2). On April 20, 2023, C&D terminated the Agreement based upon FMP's purported failure to cure these breaches. (ECF No. 43-1 at 86). On July 7, 2023, C&D filed suit to recover $8,120,112.44 in unpaid voices. (ECF No. 1 at ¶ 39).

In response to C&D's complaint, FMP brought counterclaims alleging that C&D (1) wrongfully terminated the Agreement; (2) breached the exclusivity provisions of the Agreement;

and (3) violated the covenant of good faith and fair dealing in terminating the Agreement. (ECF No. 11). C&D moved to dismiss FMP's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which the Court granted in a Memorandum and Order on September 27, 2024 ("September 27 Memorandum"). (ECF No. 41).

On May 29, 2024, counsel for C&D sent a letter to FMP including an updated amount due from FMP for $9,088,435.16, "that amount accounting for payments, credits, service charges, rebates, and attorneys' fees, but not including statutory pre-judgment interest." (ECF No. 59 at 6). On October 1, 2024, C&D's counsel sent another letter to FMP "updating the amount due from FMP to $9,942,357.67, that amount accounting for service charges, credits, attorneys' fees, but not including statutory pre-judgment interest."[2] (*Id.* at 7). On October 8, 2024, Defendant filed its Motion for Leave to Amend, and on October 30, 2024, Plaintiffs filed their Motion for Summary Judgment.

## II. Defendant's Motion for Leave to Amend

In its Motion, Defendant seeks to (1) amend its counterclaim of breach of the implied covenant of good faith and fair dealing; and (2) file an additional affirmative defense of equitable estoppel. (ECF No. 43 at 5). In opposition, Plaintiffs argue that Defendant's Motion should be denied because (1) the proposed amended counterclaim is futile and would cause Plaintiffs undue prejudice; and (2) the proposed affirmative defense is also futile. (ECF No. 53 at 8-15).

### A. Legal Standard

Where an amendment is not available as of right, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R.

---

[2] According to Plaintiff's Motion, the amount they currently request for judgment is $10,812,341.63.

3

Civ. P. 15(a)(2). The Court may deny leave to amend where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility, in this context, means the proposed amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision to grant leave to amend rests in the court's sound discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).

### B. Discussion

Plaintiffs contend that Defendant's proposed amended counterclaim of breach of the implied covenant of good faith and fair dealing is futile because the "allegations merely set forth the same theory that C&D's termination was pretextual," which this Court "previously rejected." (ECF No. 53 at 15). Plaintiffs also contend that Defendant's proposed equitable estoppel affirmative defense is futile because "FMP was obligated to purchase a minimum volume of batteries each year, and C&D's request that FMP cure its performance issue in the [Notice] when FMP was not on track to meet its obligation, cannot form the basis of a valid equitable estoppel defense." (*Id.* at 17). The Court agrees with both contentions.

#### 1. Proposed Amended Counterclaim

In its September 27 Memorandum, the Court premised its rejection of Defendant's breach of the implied covenant of good faith and fair dealing counterclaim on its rejection of Defendant's wrongful termination counterclaim: "Since the Court holds that FMP has not plead facts sufficient to claim that C&D wrongfully terminated the Agreement, it cannot find that C&D

violated the covenant of good faith and fair dealing." (ECF No. 41 at 7). The Court explained its reasoning below:

> FMP . . . asserts that it cured its failure to add new physical locations or subdistributors by committing to opening new physical locations in those states. Specifically, FMP asserts that it "finalized plans to open a new location in Sioux Falls, South Dakota in late 2023" and "[i]n or around March 2023 . . . it had arranged for subdistributors in Montana and Wyoming." (*Id.* at 18 ¶¶ 48–49.) FMP does not claim to have completed the opening of these new physical locations by the end of the cure period, rather FMP asserts that it was only required to "commit" to adding those resources by the cure deadline.

(ECF No. 41 at 3). The Court rejected Defendant's interpretation of the Agreement, finding that the Agreement 'unambiguous[ly]" states that "Defendant had the affirmative obligation to have new physical locations or subdistributors operating in Wyoming, Montana, and South Dakota by June 30, 2022," and because Defendant did not fulfill this obligation, Plaintiffs were within their right to terminate the Agreement with Defendant. (*Id.* at 5). Thus, to successfully amend its counterclaim here, Defendant would have to plead facts suggesting that it cured its material breach of the Agreement after receiving the Notice.

The Court finds that Defendant's proposed amended counterclaim is futile for Rule 15 purposes because the facts Defendant sets forth do not cure the deficiencies of its original pleading. In its proposed amended counterclaim, Defendant asserts that, during the cure period, it (1) "hastened plans to open a new physical location in Sioux Falls, South Dakota"; (2) "began identifying businesses who could act as subdistributors in Wyoming and Montana"; and (3) "informed C&D of its progress on adding resources in Wyoming, Montana, and South Dakota by email and phone conversation." (ECF No. 43-1 at 23-24). None of these facts establish what the Court stated the Agreement required of Defendant, which was "to have new physical locations or subdistributors *operating* in Wyoming, Montana, and South Dakota by June 30, 2022." (ECF No. 41 at 5) (emphasis added).

5

Because Defendant repeats the same factual allegations for wrongful termination that the Court previously rejected, its breach of the implied covenant of good faith and fair dealing counterclaim necessarily fails. Accordingly, the Court denies Defendant's Motion as it pertains to the proposed amended counterclaim.

### 2. Proposed Affirmative Defense

By way of background, Defendant consented in the Agreement to a minimum sales volume of 400,000 units in 2022 and of 450,000 units in 2023. (ECF No. 43-1 at 64). Section 10(C)(iii) of the Agreement states that in the event Plaintiffs determine that Defendant "is failing to meet" the minimum sales volume, Plaintiffs shall notify Defendant in writing "of the nature of the failure and of the period of time" during which Defendant will be expected to remedy the failure. (*Id.* at 48). In compliance with this Section, Plaintiffs informed Defendant in the Notice that it (1) failed to satisfy the 2022 minimum sales volume and (2) failed to purchase product at a rate necessary to satisfy the 2023 minimum sales volume. (ECF No. 29-1 at 2). Plaintiffs, in turn, demanded that Defendant "purchase, and pay for in full," the cumulative deficit of nearly 195,000 batteries within ninety (90) days following receipt of the Notice. (*Id.* at 2-3).

In its proposed affirmative defense, Defendant avers that Plaintiffs' breach of contract claim is barred by equitable estoppel based on the theory that Plaintiffs contracted with a third party prior to the termination of the Agreement. Specifically, Defendant asserts that, after impermissibly agreeing to give Defendant's exclusive territory to Continental Battery Company ("Continental"), Plaintiffs "aggressively pushed FMP to increase its battery orders" in the Notice. (ECF No. 43-1 at 10). Defendant explains that it "agreed to the increased volume in an attempt to cure to C&D's satisfaction and because FMP expected that it could sell these batteries as an exclusive distributor." (*Id.*). However, Defendant argues, it "would not have bought these

additional batteries had FMP known the truth that C&D intended, all along, to give FMP's Exclusive Territory to Continental and thwart FMP's ability to resell these batteries in its former Exclusive Territory." (*Id.*). As a result of Plaintiffs' deceit, Defendant claims that it "was stuck with millions of dollars' worth of batteries that it either could not sell or had to sell at fire sale prices," and that "these batteries make up a substantial portion of C&D's collection claim." (*Id.*).

"Equitable estoppel is a narrow doctrine that is sparingly invoked." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 Del. Ch. LEXIS 171, at *24 (Del. Ch. Aug. 7, 2012).[3] "[E]quitable estoppel is invoked 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.'" *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005) (quoting *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903-04 (Del. 1965)). As the party asserting equitable estoppel, Defendant bears the burden of proof, which is clear and convincing evidence. *Id.* "This Court does not lightly turn to equitable estoppel to enforce contract rights which cannot be vindicated as the contract is written." *Vintage Rodeo Parent, LLC v. Rent-a-Center, Inc.*, 2019 Del. Ch. LEXIS 87, at *23 (Del. Ch. Mar. 14, 2019).

The Court finds that Defendant's equitable estoppel argument is misplaced because it concerns a bargained-for contract right. *See Hallisey v. Artic Intermediate, LLC*, 2020 WL 6438990, at *8 (Del. Ch. Oct. 29, 2020) ("Where the representation or promise at issue is documented in a contract supported by valid consideration, equitable estoppel is not applicable. In a dispute about enforcement of a bargained-for contract right, equitable estoppel is not the proper remedy.") (citing *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, at *12 (Del.

---

[3] Section 13(B) of the Agreement provides that the "Agreement shall be governed, construed and enforced solely by the laws of the State of Delaware, without regard to its conflict of law principles." (ECF No. 1-1 at 21).

7

2000)). Based on the terms of the Agreement, which Defendant does not dispute the validity of, it is clear that Defendant was obligated to purchase a certain number of batteries from Plaintiffs and that Plaintiffs had the authority to demand that Defendant remedy its failure to do so, a failure which Defendant also does not dispute. (ECF No. 43-1 at 48, ¶¶ 61-75). As a result, equitable estoppel is not available to enforce such a bargained-for-contract right. *Genencor Int'l, Inc.*, 766 A.2d at *12; *see Hallisey*, 2020 WL 6438990, at *7 ("When parties document their promises to each other in a detailed agreement, 'it comes with ill grace to call on equity's mercy. If contract law is to be reliable, promises have to be enforceable.'") (quoting *Cent. Mortg. Co.*, 2012 Del. Ch. LEXIS 171, at *26). On this basis, the Court deems the proposed affirmative defense futile. Accordingly, the Court denies Defendant's Motion as it pertains to the proposed affirmative defense.

### III. Plaintiffs' Motion for Summary Judgment

Defendant argues that even if the Court denies its Motion for Leave to Amend, the Court should still deny summary judgment because "a reasonable jury could still find C&D wrongfully terminated the Exclusive Distributor Agreement and is precluded from recovery." (ECF No. 59 at 43). The Court is unpersuaded.

#### A. Legal Standard

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

In opposing summary judgment, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quotation omitted). "[I]nstead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). If the non-moving party fails to make this showing, then the Court may "consider the fact undisputed for purposes of the motion" and/or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2), (3).

### B. Discussion

The Court concludes that Plaintiffs have met their burden as the moving party by presenting undisputed evidence establishing the elements of their breach of contract claim, and that Defendant has failed to present facts raising a genuine dispute of material fact as to this claim.

To state a claim for breach of contract under Delaware law, a plaintiff must prove: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

Plaintiffs have established the first element, as the parties do not dispute that the Agreement is a valid and enforceable contract that bound Defendant to the obligation of payment. (ECF No. 59 at 3). Indeed, Defendant agrees that, pursuant to the Agreement, (1) it was required to pay Plaintiffs sixty (60) days from the date of each invoice for batteries Plaintiffs sold it, (2) any balances unpaid after thirty (30) days are subject to a monthly service charge of 1.5%; (3) Plaintiff is entitled to reasonable attorneys' fees incurred when collecting past due amounts

from Defendant; and (4) termination of the Agreement will not release Defendant from its obligation to make payment of all unpaid amounts as of the effective date of termination. (*Id.* at 3-4). Plaintiffs have also proved the remaining elements of their breach of contract claim, as Defendant does not deny that it breached its contractual obligation by failing to pay the relevant invoices and that Plaintiffs have suffered monetary damages as a result of that breach. (*Id.* at 5-6).

Despite not being able to demonstrate a genuine dispute of material fact with respect to Plaintiffs' breach of contract claim, Defendant asserts that Plaintiffs invalidly terminated the Agreement because not only did Plaintiffs admit that Defendant paid the overdue invoices, but estoppel barred Plaintiffs from terminating for Defendant's failure to add locations and subdistributors in Wyoming, Montana, and South Dakota. (*Id.* at 43-45). The Court does not further contemplate Defendant's arguments, as it has already held in its September 27 Memorandum that Plaintiff did not improperly terminate the Agreement. *See* ECF No. 41 at 5 ("Since FMP did not fulfill its obligation to add new physical locations or subdistributors by the end of cure period, C&D terminated pursuant to the terms of the Agreement. FMP's claim of wrongful termination therefore fails.").

Based on the above, the Court grants Plaintiff's Motion for Summary Judgment.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Leave to Amend is denied and Plaintiffs' Motion for Summary Judgment is granted. The Court will rule separately on

Plaintiffs' request for damages,[4] and on their request for attorneys' fees and costs upon consideration of Plaintiffs' impending fee petition. An appropriate order follows.

                **BY THE COURT:**

                /s/ Kelley B. Hodge

                **HODGE, KELLEY B., J.**

---

[4] Because Plaintiffs' calculations of contractual service charges and prejudgment interest is based on the Court issuing its opinion on the Motion by an earlier date, the damages figure they offer of $10,812,341.63 is not accurate. The Court expects a revised calculation of damages to be filed with the necessary fee petition and legal support.

11